**IT IS ORDERED as set forth below:**



**Date: February 2, 2012**

_____

**C. Ray Mullins
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NO: 10-75646-CRM |
| G&G MONEY, INC., | CHAPTER 7 |
| Debtor. | |
| JAMES C. CIFELLI, Chapter 7 Trustee for G&G MONEY, INC., | ADVERSARY PROCEEDING NO. 11-5196-CRM |
| Plaintiff, | |
| v. | |
| GEORGE MAZZANT, III, | |
| Defendant. | |

**ORDER**

THIS MATTER is before the Court *sua sponte*. Plaintiff initiated this adversary proceeding by filing a Complaint on April 8, 2011. Plaintiff alleged that Defendant is the alter ego of the Debtor, G&G Money, Inc., and thus personally liable for its debts. Plaintiff also claimed that Defendant's use of company assets constituted fraudulent transfers and seeks to recover misappropriated money and goods.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and the Court has jurisdiction pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. The Court finds that Defendant is liable on the alter ego claim and issues this Order granting partial summary judgment to Plaintiff for the reasons set forth below.

**I.    FACTS**

G&G Money, Inc. operated a pawn shop called On the Square Jewelry & Pawn in McDonough, Georgia. George Mazzant is the president and sole shareholder of G&G Money, Inc. While operating G&G Money, Inc., Defendant maintained an account from which he wrote checks for personal and business expenses alike. Defendant routinely collected cash from the business to pay personal expenses. He used company funds for personal expenses including his children's tuition, home expenses and utilities, personal vehicle expenses, shopping bills, restaurant charges, and various other personal items.

G&G Money, Inc. filed a voluntary petition under chapter 11 of the Bankruptcy Code on May 27, 2010. On June 9, 2010, the United States Trustee sought to appoint James C. Cifelli as Chapter 11 Trustee for the Debtor. The Court approved the appointment on June 10, 2010. The bankruptcy case was converted to a chapter 7 case on September 19, 2010. The Order converting the case also appointed Mr. Cifelli as the interim Chapter 7 Trustee.

Mr. Cifelli, as the Chapter 7 Trustee, initiated this adversary proceeding by filing a Complaint against George Mazzant on April 8, 2011.[1] Defendant initially failed to plead or otherwise defend the case. Plaintiff requested an entry of default on May 17, 2011.[2] Plaintiff also filed a Motion for Accounting, Temporary Restraining Order and Preliminary Injunction against Defendant. A lengthy hearing was held on Plaintiff's Motion on August 18, 2011.[3] The Court granted Plaintiff's Motion for Accounting and Preliminary Injunction on August 23, 2011.

When Defendant failed to comply with the Court's Order, Plaintiff filed a Motion for Contempt. On November 17, 2011, the Court held a hearing on the Motion for Contempt. The Court found that Defendant was in contempt of court and ordered him to submit an accounting of property by December 2, 2011. On December 2, 2011, Defendant submitted a sworn statement and accounting of property. No further documents have been submitted by either Plaintiff or Defendant.

On January 18, 2012, the Court held a telephonic status hearing. The parties informed the Court that no further progress had been made. The Court announced that it was going to consider how to best move the case along and would, if appropriate, consider summary judgment *sua sponte*.

---

[1] The Complaint includes nine counts. Count I is a veil piercing or alter ego claim. Counts II - VII seek to recover and turnover money and property of the estate pursuant to sections 544, 548, and 550 of the Bankruptcy Code. Count VIII is a claim for breach of fiduciary duty. Count IX is a claim for turnover pursuant to section 542 of the Bankruptcy Code.

[2] The Clerk entered default, pursuant to Bankruptcy Rule 7055, on May 18, 2011. On May 19, 2011, Defendant filed an Answer to the Complaint. Plaintiff filed a Motion for Default Judgment on July 1, 2011. Defendant responded to the Motion for Default Judgment and filed a Motion to Set Aside Default on August 2, 2011. The Court entered an Order on January 4, 2012, granting the Motion to Set Aside Clerk's Default.

[3] A transcript of the hearing appears on the docket as Doc. No. 21.

## II.    MOTION FOR SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment should be rendered if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56; FED. R. BANKR. P. 7056.  "Material facts" are those which might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Cases have long held that courts "possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).  Federal Rule of Civil Procedure 56(f) now codifies this concept.  It provides that a court may enter summary judgment in favor of a party, even if no motion for relief of that sort has been filed.  Rule 56(f), entitled Judgment Independent of the Motion, states:

> After giving notice and a reasonable time to respond, the court may:
>
> (1) grant summary judgment for a nonmovant;
>
> (2) grant the motion on grounds not raised by a party; or
>
> (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

FED. R. CIV. P. 56(f).  Thus, Rule 56(f)(3) specifically authorizes the court to enter summary judgment *sua sponte*.

Considering summary judgment *sua sponte* is appropriate when it appears that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are

before the court and those materials show that no material dispute of fact exists. *See MSF Holding Ltd. v. Fiduciary Trust Co. Int'l.*, 435 F. Supp. 2d 285 (S.D.N.Y. 2006); *see also Artistic Entm't, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1201-02 (11th Cir. 2003), *cert. denied*, 541 U.S. 988 (2004). Courts have distinguished between *sua sponte* grants of summary judgment in cases involving purely legal questions based on complete evidentiary records, and cases involving factual disputes where the non-moving party has not been afforded an adequate opportunity to develop the record. *Artistic Entm't*, 331 F.3d at 1201. Where a legal issue has been fully developed summary judgment is entirely appropriate. *Id*. at 1202 (citing *Burton v. City of Belle Glade*, 178 F.3d 1175 (11th Cir. 1999)).

Before entering summary judgment pursuant to Rule 56(f), the Court must give the parties notice of its intentions and a reasonable time to respond. FED. R. CIV. P. 56(f). What constitutes "reasonable time" is not defined. An older version of Rule 56 required ten days' notice. The most recent version of the Rule includes no specific time limit; the determination of what is "reasonable" to allow parties to respond to the court's proposed *sua sponte* action must be made according to the facts of the case. *See* 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.71 (3d ed. 2011). Here, the Court informed the parties that it was contemplating entering *sua sponte* summary judgment during the telephonic status conference held on January 18, 2012. While Rule 56(f) does not provide a specific notice requirement, it has been over ten days since the Court announced that it would consider summary judgment and neither party has come forward with additional evidence.

**III.    DISCUSSION**

Summary judgment is appropriate in the instant adversary proceeding as there is no question of material fact as to Plaintiff's veil piercing claim.  Under Georgia law, a plaintiff may pierce the corporate veil when the corporate form has been abused.  "In order to disregard the corporate entity because a corporation is a mere alter ego or business conduit of a person . . . it is necessary to show that the shareholders disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist." *Heyde v. Xtraman, Inc. et al.*, 404 S.E.2d 607, 610 (Ga. Ct. App. 1991).  Courts have fund that there is "such unity of interest" where a defendant commingles on an interchangeable or joint basis "otherwise separate properties, records or control." *Heyde*, 404 S.E.2d at 610.  In such cases, the corporate entity may be disregarded for liability purposes. *Baillie Lumber Co. v. Thompson*, 612 S.E.2d 296, 299 (Ga. 2005).  A principle found liable under an alter ego theory should be liable for the entirety of the corporation's debt. *Baillie Lumber*, 612 S.E.2d at 301.

Georgia alter ego law is not focused solely on the relationships between parties, but is also premised on equitable principles designed to prevent unjust treatment in appropriate circumstances. *See Baillie Lumber*, 612 S.E.2d at 300; *see also Acree v. McMahan*, 585 S.E.2d 873 (Ga. 2003).  The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility. *Heyde*, 404 S.E.2d at 610.  In the case of an insolvent corporation, "any alter ego claim asserted by the corporation itself will necessarily benefit third parties by providing more money with which to satisfy unsecured claims." *Baillie Lumber*, 612 S.E.2d at 300.  Indeed, bankruptcy courts in Georgia have repeatedly upheld a

6

corporation's ability to assert an alter ego action. *See e.g., Stamps v. Knobloch (In re City Commc'ns, Ltd.)*, 105 B.R. 1018 (Bankr. N.D. Ga. 1989); *Moore v. Kumer* (*In re Adam Furniture Indus.*), 191 B.R. 249 (Bankr. S.D. Ga. 1996).[4]

The Court finds that there is no genuine issue of material fact as to these elements. There is substantial evidence that Defendant disregarded the separateness of legal entities by co-mingling G&G Money, Inc.'s corporate property and affairs with his personal property and affairs. At a hearing held on August 18, 2011, Defendant admitted that he collected cash from the business to pay personal expenses and, on occasion, used personal expenses to pay corporate expenses. Pl.'s Mot. Hr'g Tr. 23:21-23, Aug. 18, 2011. The Trustee asked, "you testified in this case that everything was paid out of the company, referring to your personal expenses . . .?" Hr'g Tr. 23:24-24:1. Defendant replied, "Yes." Hr'g Tr. 24:2. Defendant further stated: "I never wrote a check and put it in my personal account. . . . I wrote it out of one checkbook." Hr'g Tr. 28:18-20. Defendant later added, "I never wrote myself a paycheck out of that company to me to go into a bank account. I didn't know until now that that was wrong. . . . And that is what I had done. When I needed to pay personal bills or things that I wanted, that was part of my pay, because I did not know the difference." Hr'g Tr. 83:14-20.

The Trustee asked about a number of specific expenses. Defendant acknowledged that he used company funds to pay for the following: his children's tuition, his family's television expenses, buying and repairing a hot tub, a home renovation, the construction of a home deck, mortgage payments on his home, personal vehicle expenses (including gasoline and repair), Target bills,

---

[4] Under Georgia law, an alter ego claim is property of the estate under § 541 and can be asserted by the Trustee. *See City Commc'ns*, 105 B.R. at 1022.

package store bills, charges from Direct TV and Blockbuster Video, a gym membership, cell phone bills, jet skis, home utilities, restaurant charges, an RV rental, and home rental and repair. Hr'g Tr. 26:6-28:15. This testimony demonstrates that Defendant used his personal property and that of G&G Money, Inc. on an interchangeable or joint basis.

In fact, Defendant admitted that he mixed personal and business matters. At the hearing, the Trustee specifically asked, "You commingled your personal affairs with business affairs?" Hr'g Tr. 132:19-20. Defendant replied, "Yes, I did. I did." Hr'g Tr. 132:21.

### IV.    CONCLUSION

The evidence demonstrates that there is no genuine issue of material fact as to whether Defendant operated G&G Money, Inc. as his alter ego - Defendant admitted that he did. As there is no factual dispute, no further proceedings on this claim are necessary. The Court will grant partial summary judgment in favor of Plaintiff on the veil piercing claim. Accordingly,

**IT IS ORDERED** that Plaintiff is hereby **GRANTED** partial summary judgment.

The Clerk's Office is directed to serve a copy of this Order upon Plaintiff, Plaintiff's Counsel, Defendant, Defendant's counsel, and the United States Trustee.

### END OF DOCUMENT.