UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 7 |
| G&G MONEY, INC., ) | |
| ) | CASE NO. 10-75646 – CRM |
| Debtor. ) | |
| ) | |
| ) | |
| JAMES C. CIFELLI, Chapter 11 Trustee of ) | |
| G&G MONEY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Proceeding |
| ) | No. 11-05196 |
| GEORGE A. MAZZANT, III, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**RESPONSE TO MOTION TO VACATE PRELIMINARY INJUNCTION AND POST-HEARING BRIEF IN SUPPORT OF MOTION FOR CONTEMPT AGAINST DEFENDANT GEORGE A. MAZZANT, III FOR FAILURE TO COMPLY WITH COURT ORDER**

COMES NOW James C. Cifelli, as Chapter 7 Trustee for the bankruptcy estate of G&G Money, Inc. ("Debtor") and Plaintiff herein, and files this his Response to Motion to Vacate Preliminary Injunction and Post-Hearing Brief in Support of Motion for Contempt Against Defendant George A. Mazzant, III ("Mazzant" or "Defendant") as follows:

**I. FACTS**

1.  The above-styled adversary proceeding was commenced on April 8, 2011, by the filing of Plaintiff's Complaint.

2.  The Complaint seeks, *inter alia*, to require Mazzant to account for and return property taken from G&G's inventory, to pierce the corporate veil, to order that Mazzant is the

698176-1

alter ego of G&G Money, Inc. ("G&G") and to order that Mazzant is personally liable for the debts owed by G&G to its creditors.

3. On July 6, 2011, the Trustee filed his Motion for Accounting, Temporary Restraining Order and Preliminary Injunction Against Defendant George A. Mazzant, III (Doc. No. 7). The Court conducted an evidentiary hearing on the Motion on August 18, 2011.

4. Following the evidentiary hearing, the Court entered the Accounting Order on August 23, 2011. The Accounting Order provided:

> FURTHER ORDERED that, within thirty (30) days of the date of entry of this Order, Defendant shall file a sworn statement or affidavit specifically accounting for the property listed on the attached Exhibit "A" (and any other property or inventory which Defendant took from G&G or which he claimed to own but which was offered for sale at G&G), specifically including where such property is kept, and if such property is not in his possession, custody or control, specifically account for how he disposed of the same, identify the party to whom and when he transferred or sold each such item, identify and trace all proceeds that he received for such property, and account for and produce all records documenting all of the foregoing.
>
> The Court retains jurisdiction in this matter for the consideration of imposing appropriate sanctions against Defendant if Defendant fails to fully comply with this Order.

Accounting Order at p. 3.

5. The deadline for the Defendant to file a sworn statement was September 22, 2011.

6. Plaintiff filed his Motion for Contempt on October 19, 2011. The Court held a hearing on the Motion for Contempt of November 17, 2011, again directed Defendant to file a sworn statement and took the matter under advisement.

7. Defendant filed a "Sworn Statement and Accounting for Property" on December 2, 2011.

8. The Court scheduled and conducted a telephonic status conference regarding the Motion for Contempt on January 18, 2012. At the status conference, counsel for Plaintiff

continued to assert that Defendant had failed to comply with the Court's Accounting Order and that Defendant's "Sworn Statement" failed in fact to account for any specific items of property whatsoever.

9. On February 2, 2012, the Court entered an Order and Judgment granting Plaintiff partial summary judgment on his veil piercing claim of his complaint and holding that Defendant operated Debtor G&G Money, Inc. as Defendant's alter ego.

10. On February 15, 2012, Defendant filed his Motion to Vacate Preliminary Injunction (Docket No. 30).

## II. ARGUMENT

In the motion to vacate, Defendant asserts that maintaining the injunction is inequitable "because the Trustee has accomplished the purpose of the litigation." To the contrary, the Trustee shows that the Accounting Order and Injunction should remain in effect. As the Defendant acknowledges, the "Court has already entered a judgment that Mazzant is liable for the debts of G&G Money." Defendant asserts that the "extent to which assets were intermingled is no longer relevant or necessary." Plaintiff shows that the Court should not vacate the injunctive provisions of the Accounting order which provide: "FURTHER ORDERED that Defendant, or any person acting through or on behalf of Defendant, and any person who has notice of this order, be and hereby are restrained and enjoined from taking any action to dispose of any property in the possession or control of Defendant which Defendant took from G&G (or property that he claimed to be his own but that had been offered for sale at G&G) under his characterization of such acquisition as salary, compensation, dividend, profit or otherwise." Defendant, and all others with notice of the Accounting Order, should remain prohibited by the injunction from disposing of property that had been offered for sale at G&G. Without the

injunction in place, Defendant, and others with notice of the Accounting Order, could dispose of assets without fear of being in contempt of this court's order. The fact that a judgment has been entered against Defendant would do nothing to stop Defendant from disposing of assets, and only the threat of possible contempt sanctions has done anything thus far to cause this Defendant to make even a pretense of compliance with this Court's Orders.

Further, Defendant should be held in contempt on the basis that his "Sworn Statement" does nothing but repeat the testimony which has been discredited at hearings before this Court. Defendant's Sworn Statement does not comply with the Accounting Order's direction that Defendant "file a sworn statement or affidavit *specifically* accounting for the property listed on the attached Exhibit "A" (and any other property or inventory which Defendant took from G&G or which he claimed to own but which was offered for sale at G&G), *specifically including where such property is kept, and if such property is not in his possession, custody or control, specifically account for how he disposed of the same, identify the party to whom and when he transferred or sold each such item, identify and trace all proceeds that he received for such property, and account for and produce all records documenting all of the foregoing*" (emphasis added).[1]

In his Sworn Statement, Defendant claims that the inventory list (attached as Exhibit "A" to the Accounting Order) was inaccurate and therefore could not allow for individualized identification. Defendant claims in Paragraph 7 of his Sworn Statement that G&G either sold inventory to customers or sold it to Georgia Coin and Jewelry a/k/a Diamond Traders

---

[1] Defendant asserts in the Motion to Vacate that "Mazzant's counsel has since [the telephonic hearing on Jan. 18] been unsuccessful in communicating with opposing counsel" (Motion at p. 4). It should be noted that Defendant has filed to account for any specific item of property whatsoever. The exhibit to the Order listed specific items which Defendant was to account for. In his response, Defendant merely repeats his assertion that the inventory list was wrong and that, in general, he sold items to the "meltman" and sold firearms at gun shows. He fails to account for any specific item. The assertion that Plaintiff's counsel should more clearly set out the information required from Mazzant is not well-founded.

4

International (sometimes referred to as the "meltman" or the "refinery") and that no records were retained. Attached to his Sworn Statement as Exhibit "A" are selected receipts from Georgia Coin & Jewelry from January 2009 through June of 2010. It should be noted, however, that the receipts attached to Defendant's Sworn Statement are receipts that had been produced by Georgia Coin & Jewelry in response to a subpoena served by The Hughes Company ("Hughes"), the main secured creditor of G&G. Defendant apparently made no effort to attach to his affidavit any other receipts that he may have had in his possession. Defendant did not include or explain any of the receipts for "loans" he got from Georgia Coin & Jewelry during that period. Georgia Coin & Jewelry produced to Hughes the attached receipts and check regarding "loans" and the attached post-bankruptcy receipts for Mazzant's sales to the meltman after June 15, 2010. Defendant neither included nor explained these receipts in his Sworn Statement. Instead, the last receipt produced by Defendant with his Sworn Affidavit was for $16,142.37 dated June 15, 2010 (or five days after the appointment of a trustee).

Defendant's assertion that the inventory list is "inaccurate" is contrary to his testimony at the hearing on June 7, 2010 hearing that the written inventory was "very close" to what was on the premises at the time he took the jewelry (Transcript of June 7, 2010 Hearing at p. 53).

It is undisputed that, just prior to the anticipated enforcement by the Sheriff of Henry County of an immediate writ of personal possession issued to a secured creditor, The Hughes Company ("Hughes"), Mazzant removed virtually the entire jewelry inventory from the McDonough premises of G&G. (Transcript of June 7, 2010 Hearing at p. 59, 85).

Gina Longino testified that Defendant removed 98% of the jewelry on the premises before the Sheriff levied (Transcript of June 7, 2010 Hearing at p. 160). She later testified that, when she returned to the store on two separate occasions at the request of the Trustee (following

5

two returns of inventory by the Defendant), there was still probably $100,000 worth of jewelry that had not been returned to the store (Transcript of August 18, 2011 Hearing at pp. 145-146). Mazzant testified that he left the premises with the inventory prior to arrival of the Sheriff and his very first stop was to an Atlanta "refinery" at which he tried to sell some or all jewelry for cash. He was unsuccessful, as Hughes had forewarned the refinery that Hughes claimed a security interest in the jewelry inventory and did not consent to its sale. Thereafter, Mazzant testified that he drove around north Georgia for two days, with most of the inventory in his car or on his person, staying over night at two inexpensive motels (whose specific location and identities he could not recall) (generally, Deposition of George Anthony Mazzant III, Volume II, August 27, 2010, pp. 288-289, 291-292; hereafter, "8/27 Deposition, p. ____").

Mazzant testified that he threw away all records as to where he stayed. Mazzant also testified that after he unsuccessfully tried to sell the jewelry to the melt man, he drove to the home of a friend near the Alabama state line, "Donnie", whose last name, address and phone number he could not recall when he testified in this case. He left with "Donnie" a locked banker's bag of jewelry without telling "Donnie" what was in the bag. He testified inconsistently as to what specific jewelry he had in that bag (8/27 Deposition at p.281-282 and Transcript of Meeting of Creditors, July 1, 2010, pp. 109-111; hereafter "341 Transcript, p. ____").

Mazzant testified that, prior to the Sheriff's execution of the writ, he instructed Longino to remove five loose diamonds from the store's display cases, which she did. She was also instructed by Mazzant to replace those diamonds with Cubic Zirconia (fake diamonds) (Transcript of June 7, 2010 Hearing at p.158). Mazzant further testified that he has not seen those loose diamonds since that day, and implied that Ms. Longino is responsible for their

6

disappearance. Longino testified that at Mazzant's instruction she placed five loose diamonds in or on a jeweler's desk on the premises (Transcript of June 7, 2010 Hearing at pp.158-59).

In his Sworn Statement, Defendant does not mention a tennis bracelet which has been the subject of testimony in this case. Defendant testified that he acquired a tennis bracelet in late 2009 intending it as a Christmas gift for his then wife (Deposition of George Anthony Mazzant, III, August 25, 2010, p. 96; hereafter "8/25 Deposition, p. _____"). Mazzant claimed not to remember the purchase price or the company from which he purchased the bracelet (8/25 Deposition, p. 97). He admitted that G&G was the source of funds to purchase the bracelet (8/25 Deposition, pp. 97-98). When he changed his mind about giving the bracelet to his wife, he placed the bracelet in a store display for intended sale (8/25 Deposition, p. 96). Prior to the Sheriff's levy, Defendant directed G&G employee Gina Longino to give the tennis bracelet to his father, George Mazzant, Jr. who also worked at the store (8/25 Deposition, p. 96). Mazzant later testified that he sold the bracelet for close to $20,000 (8/25 Deposition, p. 102). Mazzant later testified that he personally sold the tennis bracelet for between $7,000 and $20,000 (8/27 Deposition at p. 247, lines 17-21), although he claimed he could not remember the specifics of the transaction, and that he discarded all records relating to that transaction (8/27 Deposition, p. 319).

At a later hearing in this adversary on August 18, 2011, Defendant denied under oath that he had sold the bracelet to Diamond Traders or Georgia Coin[2] (Transcript of August 18, 2011 Hearing at p. 49) until he was confronted with his earlier testimony from his August 25, 2010 deposition. (Transcript of August 18, 2011 Hearing at pp. 49-50). At the August 18, 2011 hearing, Defendant denied receiving anywhere near $20,000 for his sale of the bracelet (Transcript of August 18, 2011 Hearing at pp. 48-52). When asked about Check No. 6207 (dated

---

[2] The transcript incorrectly refers to Georgia Coin as Georgia Klein.

7

June 3, 2010 for $20,000) from Georgia Coin (Exhibit 14 at the August 18, 2011 Hearing), Defendant testified that the only reason he was "certain" that the check was not for the sale of the tennis bracelet was because he knew he did not get $20,000 for it. Transcript of August 18, 2011 Hearing at pp. 68-71.

The bracelet was sold notwithstanding several demands by the trustee for the bracelet's return. If it was sold, it was sold after the Sheriff's levy in May when Gina Longino says she gave it to Mazzant's father. Check #6207 from Ga. Coin (see attached) may well represent the sale/loan against the tennis bracelet. It was dated 6/2 or 6/3 (filing date was 5/27). Check amount is $20,000 payable to George personally. The tennis bracelet is clearly covered by the Accounting Order because it was purchased by G&G and because it was offered for sale at G&G. Yet Mazzant continues to conceal what he did with it and not even mention it in his affidavit.

The only documents produced by Defendant in his Sworn Statement regarding his disposition of jewelry were only certain documents which he knew had already been obtained by Hughes or by the Trustee from the meltman. Defendant remains unwilling to say in his Sworn Statement what he provided to "Donnie," and Defendant provided no mention of the tennis bracelet and made no disclosure (much less explanation) of his post-bankruptcy transactions with the meltman.

In his Sworn Statement, Defendant acknowledges that the 240 guns were purchased by JDH Investments and G&G. Defendant asserts in his Sworn Statement that he either took the guns as compensation or paid the company for them. He acknowledges in his Sworn Statement that he sold the firearms **after the bankruptcy filing**: "After G&G Money declared bankruptcy, and the Trustee took over operation of the store, I had no source of income. As my only means

8

of survival, I began selling firearms from my private collection." Sworn Statement at paragraph 21.

Defendant further asserts that: (a) he sold 100-150 guns after the filing at various gun shows for cash and checks; (b) he sold 25-30 guns at Bargain Barn; (c) he sold 50 guns to individuals; and (d) he kept no records of any of these transactions.

Since Defendant concedes he no longer has possession of any of these 240 guns, the Accounting Order requires Defendant to provide a detailed accounting of their disposition. Defendant should be held in contempt where he has no recollection of any details, he has purposefully discarded all relevant records, and he does not disclose what he was paid, where the proceeds were deposited, when a sale took place or which guns went to which buyer.

Defendant's continued assertions regarding the lack of records are contrary to his own testimony. As a regular practice, Mazzant admitted he took cash and merchandise from G&G at will but that he and his accountant engaged in year-end reconciliation of these transactions, classifying them for tax purposes as owner compensation (8/25 Deposition, pp. 75-77). Defendant further testified that he had the ability from his records to accurately calculate what was owed for Georgia sales tax and for withholding tax. (Transcript of June 7, 2010 Hearing at p. 110, lines 9-12). Defendant testified that his accountant would keep track of the cash he took out of the company at the end of the year (Transcript of August 18, 2011 Hearing at p. 24, lines 6-9).

The Defendant's testimony and filings in this matter warrant a contempt sanction.

WHEREFORE, for the foregoing reasons, Plaintiff seeks entry of an Order:

(a) finding Defendant George A. Mazzant, III to be in civil or criminal contempt of the Accounting Order;

9

(b)	levying sanctions, including an assessment of costs, as well as a daily fine and incarceration until he purges himself of the contempt, and awarding other compensatory or coercive sanctions against Defendant arising out of his contempt; and

(c)	granting such further relief as is just and proper.

This 5th day of March, 2012.

        LAMBERTH, CIFELLI, STOKES,
          ELLIS & NASON, P.A.


        By: __/s/ William D. Matthews_____
         James C. Cifelli
         Georgia Bar No. 125750
         William D. Matthews
         Georgia Bar No. 470865

        Attorneys for Trustee


3343 Peachtree Road, N.E., Suite 550
Atlanta, Georgia 30326-1022
Phone: (404) 262-7373
Fax: (404) 262-9911

## CERTIFICATE OF SERVICE

This is to certify that I have this date served a copy of the foregoing **RESPONSE** upon Defendant, by depositing same in the United States regular mail with adequate postage affixed thereto to assure delivery, addressed as follows:

>George Mazzant
>2571 TURTLECOVE TRAILWAY
>MONTICELLO GA 31064

I further certify that I have this date served a copy of the foregoing RESPONSE upon Defendant's counsel of record, by regular mail and by electronic mail as indicated:

>Aubrey T. Villines  (atvill7@msn.com)
>Jeffrey R. Filipovits (jrfilipvits@gmail.com)
>2900 Chamblee-Tucker Road
>Building 1
>Atlanta, GA  30341

This 5th day of March, 2012.

>/s/ William D. Matthews___
>   William D. Matthews

374179