**IT IS ORDERED as set forth below:**



**Date: July 1, 2015**

_____

**C. Ray Mullins**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO: 10-75646-CRM |
| G&G MONEY, INC., | CHAPTER 7 |
| Debtor. | |
| JAMES C. CIFELLI, CHAPTER 7 TRUSTEE FOR G&G MONEY, INC., | ADVERSARY PROCEEDING NO. 11-5196-CRM |
| Plaintiff, | |
| v. | |
| GEORGE MAZZANT, III, | |
| Defendant. | |

## ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion for Contempt (the "Motion").

**I.    FACTS**

G&G Money, Inc. filed chapter 11 bankruptcy on May 27, 2010. The case was converted to a chapter 7 case, and James C. Cifelli was appointed as the Chapter 7 Trustee. The Trustee initiated this adversary proceeding by filing a complaint against George Mazzant, the president and sole shareholder of G&G Money, Inc.

G&G Money, Inc. operated a pawn shop known as On the Square Jewelry & Pawn of McDonough. While operating G&G Money, Inc., Defendant maintained an account from which he wrote checks for personal and business expenses alike. Defendant routinely collected cash from the business to pay personal expenses. He used company funds for personal expenses including his children's tuition, home expenses and utilities, personal vehicle expenses, shopping bills, restaurant charges, and various other personal items. Defendant disregarded the separateness of legal entities by co-mingling G&G Money, Inc.'s corporate property and affairs with his personal property and affairs and operated G&G Money, Inc. as his alter ego.

Plaintiff filed a Motion for Accounting, Temporary Restraining Order and Preliminary Injunction against Defendant. After a lengthy hearing, the Court granted Plaintiff's Motion for Accounting and Preliminary Injunction and ordered Defendant to file a sworn statement or affidavit specifically accounting for the property listed in Exhibit A within thirty days ("Accounting Order"). Exhibit A sought information regarding approximately 600 jewelry items and 240 firearms. The order required Defendant to state "where such property is kept, and if such property is not in his possession, custody or control, specifically account for how he disposed of the same, identify the party to whom and when he transferred or sold each such item, identify and

2

trace all proceeds that he received for such property, and account for and produce all records documenting all of the foregoing."

Defendant initially failed to comply with the Accounting Order. Plaintiff filed the Motion. On November 17, 2011, the Court held a hearing on the Motion, after which the Court found that Defendant was in contempt of court and ordered him to submit an accounting of property by December 2, 2011. On December 2, 2011, Defendant submitted a sworn statement and accounting of property.

The sworn statement and accounting is 196-pages long. In his sworn statement, Defendant stated that G&G Money, Inc.'s inventory system was defective – items were entered into the inventory but were not removed when they were sold. The list, according to Defendant, "represents the sum total of all jewelry ever possessed by G&G Money during the time records were kept; it does not represent a final or complete inventory list." Defendant stated that, "[b]ecause of the inaccuracy of the inventory list, the vast number of items, and the fact that the descriptions of the items do not allow for individualized identification," he could not provide an itemized description of how each item was sold or disposed.

As for the firearms, Defendant swore that, "After being purchased by G&G Money, many were transferred to my private collection." He stated that he either took the firearms as employment compensation or paid the store for each firearm. Defendant stated that, after G&G Money, Inc. filed bankruptcy, he began selling firearms from his private collection. Defendant stated that a majority of these firearms (100-150) were sold at gun shows; 25-30 guns were sold at Bargain Barn; 50 guns were sold to individuals; 15 guns were returned to the pawn shop and may have been sold; other guns were given as gifts, traded, returned to the seller, and stolen. Defendant contended that, while he recognized "a few firearms specifically from the list, the vast

3

number makes it impossible for me to specify where and when each gun was sold."

The Court held a status hearing on April 2, 2015, during which Plaintiff asserted that Defendant's sworn statement fails to account for specific items of property and fails to provide a detailed accounting of how he disposed of firearms. Plaintiff asked the Court to find Defendant in contempt of the Accounting Order, and to levy sanctions against Defendant.[1] The Court invited the parties to submit additional authority, and Defendant filed a brief in opposition to the Motion.

## II.    APPLICABLE LAW

Courts have inherent contempt powers in all proceedings, including bankruptcy, to "achieve the orderly and expeditious disposition of cases." *Jove Eng'g, Inc. v. Internal Revenue Serv.*, 92 F.3d 1539, 1153 (11th Cir. 1996) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). These inherent powers "necessarily result from the nature of their institution and cannot be dispensed with in a Court, because they are necessary to the exercise of all other powers." *Id*. It is firmly established that all courts have the inherent power to punish for contempt. *See id*. These inherent powers arise independent of statute and rule. *Id*. While all courts possess some inherent contempt power, courts should exercise caution when invoking its inherent power – "inherent powers must be exercised with restraint and discretion." *Id*. at 1554.

Aside from the court's inherent power, the court has discretionary statutory powers in bankruptcy proceedings under 11 U.S.C. § 105. Section 105 of the Bankruptcy Code creates a statutory contempt power in bankruptcy proceedings that is distinct from the court's inherent contempt powers. *Jove*, 92 F.3d at 1553. Section 105 states, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

---

[1] Defendant filed an individual chapter 7 bankruptcy case on July 1, 2013 in the Middle District of Georgia, case number 13-51671-AEC *George A. Mazzant, III*. Plaintiff's allegations in the Motion also form the basis of a complaint against Defendant filed in the Bankruptcy Court for the Middle District of Georgia, adversary proceeding no. 13-5072 *Cifelli v. Mazzant*. Plaintiff alleges that Defendant concealed property of G&G Money Inc. and that the concealment is grounds to deny Defendant a discharge under section 727.

U.S.C. § 105.  This provision is incredibly broad – it encompasses all forms of orders including those that award monetary relief.  *Jove*, 92 F.3d at 1554.  The plain meaning of the section encompasses *any* type of order, so long as it is necessary or appropriate to carry out the provisions of the Code.  *Id*.  The recent Supreme Court decision, *Law v. Siegel*, 134 S. Ct. 1188 (2014), however, emphasizes that section 105(a) has its limits.  The Supreme Court explained, "It is hornbook law that §105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'"  *Id*. at 1194 (citing 2 Collier on Bankruptcy ¶105.01[2], p. 105–6 (16th ed. 2013)).  Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits.  *Id.*  The Court continued: "We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code."  *Id*. at 1196 (internal citations omitted).  Thus, courts should not rely on section 105(a) alone in issuing sanctions.

While bankruptcy courts may enter civil contempt sanctions, bankruptcy courts do not have the inherent power to enter criminal contempt sanctions.  Criminal contempt sanctions are punitive in nature and are imposed to vindicate the authority of the court.  *Jove*, 92 F.3d at 1545 n.4.  In *In re Hipp, Inc.*, 895 F.2d 1503 (5th Cir. 1990), the Fifth Circuit evaluated a bankruptcy court's authority to enter punitive relief and found that there was no constitutional authority for bankruptcy criminal contempt powers.  *Id*. at 1512-13.  Thus, bankruptcy courts lack an inherent criminal contempt power.  *See also Walton v. Countrywide Home Loans, Inc.*, No. 08-23337, 2009 U.S. Dist. LEXIS 60278, at *30 (S.D. Fla. June 9, 2009); *Hipp*, 895 F.2d at 1513 (finding that section 105(a) does not confer power bankruptcy courts power to enter criminal contempt because criminal contempt "is not necessary or appropriate to enforce or implement the

5

court's rules or orders, but is instead intended to vindicate the authority of the court.").

The party seeking sanctions must establish by clear and convincing evidence that a court order was violated. *Jove*, 92 F.3d at 1545. This standard requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt. *See id.* The nature of court-ordered injunctions requires the enforcing court to determine whether: 1) the allegedly violated order was valid and lawful; 2) the order was clear, definite and unambiguous; and 3) the alleged violator had the ability to comply with the order. *Id*. Note that "the focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Id*. at 1555. The court must therefore determine not whether the alleged contemnor intended to comply with the court's order but whether he did in fact comply with the order.

Once the movant establishes his prima facie case, the burden shifts to the contemnor to present evidence to show that he is unable to comply with the court's order. *Elec. Workers Pension Trust Fund of Local Union 58, IBEW v. Gary's Elec. Service Co.*, 340 F.3d 373, 379 (6th Cir.2003) (citing *U.S. v. Rylander*, 460 U.S. 752, 757 (1983)). To meet this burden a contemnor is required "to show categorically and in detail why he is unable to comply with the court's order[,]" and demonstrate that he "took all reasonable steps within [their] power to comply with the court's order." *Elec. Workers Pension Trust Fund*, 340 F.3d at 379.

For example, in *Gordon v. Hill (In re Wilson)*, 454 B.R. 546 (Bankr. N.D. Ga. 2011), the Court found that sanctions were not appropriate where conduct demonstrated substantial compliance with the Court's order (lifting the automatic stay) and applicable law. *Id*. at 553. In reaching its conclusion, the Court noted that the purpose of civil contempt is to compensate the complainant and to coerce the contemnor into complying with the automatic stay. The court

found that sanctions were not warranted because the conduct did not cause any loss.

If the moving party establishes by clear and convincing evidence that a court order was violated, the court must then determine the appropriate measure of sanctions. Civil contempt sanctions serve two purposes: 1) to compensate the complainant for losses and expenses it incurred because of the contemptuous act; and 2) to coerce the contemnor into complying with the court order. *Jove*, 92 F.3d at 1557; *see also Gordon*, 454 B.R. at 551. "Sanctions imposed for civil contempt to coerce compliance 'cannot be any greater than necessary to ensure such compliance' and may not be so excessive as to be punitive in nature." *Jove*, 92 F.3d at 1558. Sanctions are coercive if they serve the complainant rather than vindicate some public interest. *Id*. Sanctions are also coercive if the contemnor has the ability to control the extent of the sanctions. *Id*. A per diem fine imposed for each day a contemnor fails to comply with an affirmative court order, for example, is coercive and permissible as a civil contempt sanction. *See Int'l Union, United Mine Workers of Am. V. Bagwell*, 512 U.S. 821, 828 (1994); *see also Jove*, 92 F.3d at 1559.

### III. ANALYSIS

Plaintiff contends that Defendant's sworn statement does not comply with the Accounting Order's direction to specifically account for the property listed on Exhibit A. More specifically, the Plaintiff contends that the Sworn Statement does not attach certain receipts in Defendant's possession, does not explain any of the receipts for "loans" from Georgia Coin & Jewelry, does not mention a specific tennis bracelet, does not disclose or explain post-bankruptcy transactions with the meltman, and does not provide a detailed accounting of the disposition of 240 guns. Plaintiff further states that Defendant's assertions regarding his lack of records are contrary to his own testimony. The Court must determine whether Plaintiff has demonstrated, by a preponderance of the evidence, that Defendant violated the Court's order by failing to account for these items.

While the Defendant has not provided a complete accounting for each and every item, he did file a statement of accounting that substantially complies with the Accounting Order. Defendant provided a significant number of receipts and related records, and his submission totals 196 pages.

Further, Defendant has demonstrated that he took reasonable steps to comply with the Accounting Order. Defendant states that he did not know where the property was, and indicated that some of the jewelry was sold. In his sworn statement, Defendant stated that G&G Money, Inc.'s inventory system was defective – items were entered into the inventory but were not removed when they were sold. The list, according to Defendant, "represents the sum total of all jewelry ever possessed by G&G Money during the time records were kept; it does not represent a final or complete inventory list." Defendant explained that, "[b]ecause of the inaccuracy of the inventory list, the vast number of items, and the fact that the descriptions of the items do not allow for individualized identification, I cannot provide an itemized description for how each item was sold or disposed of. It is impossible for me or any other person to account for the location of each individual item." The Court finds this statement credible – this was not a sophisticated business operation and there is substantial evidence that Defendant disregarded the separateness of legal entities by comingling G&G Money, Inc.'s corporate property and affairs with his personal property and affairs.

More concerning is that Defendant does not have receipts or transaction records for most of the firearms he sold and traded. Defendant swore that he transferred many firearms to his private collection and that he "either took these firearms as part of my compensation as an employee or paid the store for each firearm." Defendant stated that, after G&G Money, Inc. filed bankruptcy, he began selling firearms and that a majority of these firearms (100-150) were sold at gun shows;

8

25-30 guns were sold at Bargain Barn; 50 guns were sold to individuals; 15 guns were returned to the pawn shop and may have been sold; other guns were given as gifts, traded, returned to the seller, and stolen. Defendant contends that "the vast number [of firearms] makes it impossible for me to specify where and when each gun was sold." While the Court finds Defendant's cavalier attitude toward the sale and trade of a significant number of firearms concerning, the Court finds Defendant's statements regarding the disposition of the firearms credible. Further, it does not feel that sanctions would coerce Defendant into providing additional information.

The Court finds that sanctions would not necessarily coerce Defendant into supplying the missing information. Moreover, Defendant filed an individual chapter 7 bankruptcy case. Because the Court previously found that Defendant operated G&G Money, Inc. as his alter ego, G&G Money, Inc.'s assets should be listed as Defendant's own on his bankruptcy schedules. Because Defendant's conduct shows substantial compliance with the Court's order, and because the purpose of civil contempt is in part to coerce the contemnor into complying with the Court's orders, the Court finds that sanctions and a daily fine are not appropriate here.

## V. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Motion be and is hereby **DENIED.**

The Clerk's Office is directed to serve a copy of this Order upon Plaintiff, Plaintiff's Counsel, Defendant, Defendant's counsel, and the United States Trustee.

## END OF DOCUMENT.